**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-19-01331-001-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Praxedis Saul Portillo-Gonzalez, | |
| Defendant. | |

The Defendant has filed a Motion to Dismiss the Indictment (Doc. 39), and the Government has filed a Response (Doc. 44), to which the Defendant has Replied (Doc. 47). An oral argument was held on May 7, 2021. While the Motion was pending, the United States Supreme Court issued its opinion in *United States v. Palomar-Santiago*, 593 U.S. ___ (2021) which prompted the Court to seek supplemental briefing on whether the opinion affected the instant Motion. The parties have provided that supplemental briefing. (*See* Docs. 52 and 53). The Court now issues its ruling.

**I.    Background**

The Defendant is a citizen of Mexico and is currently 39 years old. The Defendant was indicted by a federal grand jury on November 19, 2019 for Reentry of a Removed Alien in violation of Title 8 U.S.C. § 1326(b)(1). (Doc. 1). The Defendant's first removal order, which forms the basis for the Indictment, occurred on December 21, 2000 following a hearing before an Immigration Judge ("IJ"). (Doc. 44-1) (Doc. 42)[1]. That hearing

---

[1] Doc. 42 is a recorded transcript of the removal proceedings that occurred on December

occurred after the Defendant was referred to the U.S. Immigration and Naturalization Service ("INS") by a Maricopa County Superior Court judge following a conviction for felony possession of drug paraphernalia (Doc. 44-2). This December 2000 removal order formed the basis for the Defendant's subsequent removals from the United States, the last of which occurred on February 27, 2017. (Doc. 44-3). The Defendant claims that his 2000 removal order, which is an element of his pending § 1326(b)(1) charge, is invalid. Therefore, he moves this Court to dismiss the Indictment.

## II.     Legal Standards

### A.     § 1326(d)

A defendant charged with a section 1326 violation has a due process right to collaterally attack his removal order because that order serves as a predicate element of the reentry charge. *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 2047 (9th Cir. 2004). Before *United States v. Palomar-Santiago*, in the Ninth Circuit, a defendant needed only demonstrate that the entry of the prior removal order was fundamentally unfair. 8 U.S.C. § 1326(d). In *Palomar-Santiago*, the Supreme Court held that this approach "is incompatible with the text of 1326(d)." 593 U.S. at 5.

The statute, upon which the Defendant relies to dismiss the § 1326 charge states:

> "In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order . . . unless the alien demonstrates that –
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; *and*
> (3) the entry of the order was fundamentally unfair."

8 U.S.C. § 1326(d) (emphasis added).

The Supreme Court observed that the Congress prescribed "three prerequisites that defendants facing unlawful reentry charges must satisfy before they can challenge their original removal orders." *Id*. at 3. The Court recognized that the Congress used "mandatory language" thus, "a court may not excuse a failure to exhaust." *Id*. (citations

---

21, 2000.

omitted). Yet, the Ninth Circuit's precedent enabled defendants to bring a collateral challenge without meeting the first two mandatory prerequisites. *See Id.* Thus, the Supreme Court clarified that "each of the statutory requirements of 1326(d) is mandatory." *Id.* at 7-8.[2] Therefore, the Court will analyze whether the Defendant meets all three of the § 1326(d) prerequisites.

The Court, applying *Palomar-Santiago*, finds nothing in the record to support that the Defendant, Portillo-Gonzalez, has met all three prerequisites of § 1326(d). First, the Defendant initially and summarily asserted that "[he] is exempt from having to show exhaustion and judicial review." (Doc. 39 at 7). (citing *United States v. Vidal-Mendoza*, 705 F.3d 1012, 1016 ("improper advisal: '(1) excuses the alien form § 1326(d)(1)'s exhaustion requirement, (2) satisfies § 1326(d)(2)'s deprivation of judicial review and; and also (3) serves as a due process violation[.]'"). He now states that he "does not contend that he was not removable as charged in his Notice to Appear" and "he [does not] contend that the IJ made a substantive error of law in sustaining [that charge]." (Doc. 52 at 3). So, the Defendant concedes that he was removable and the IJ correctly found him removable. Rather, he asserts that "his rights were violated" because in the pre-conclusion voluntary removal proceeding, the IJ "misadvised Mr. Portillo" that he needed $5, which deprived him of an opportunity to exhaust his administrative remedies or to seek judicial review. (*Id.*) After a thorough review of the IJ's proceedings and guided by the analysis of *Palomar-Santiago*, the Court disagrees.

Importantly, the Defendant, with minor exception, exclusively supports his argument with numerous out-of-circuit district court opinions that observed in a pre-hearing voluntary departure, "an alien need not show that he has the financial means to deport." (*See* Doc. 39 at 5-6). A close examination of his district court cases within this circuit show that they predominantly rely on a Board of Immigration Appeals ("BIA") opinion, *Arguelles-Campos*, 22 I.N. Dec. 811 (1999). (*Id.* at 6) (citing *United States v.*

---

[2] The Defendant's argument that *Palomar-Santiago*, addressed "facts different than those at issue here," or a "circuit split" which distinguishes his case is unavailing. (Doc. 52 at 1-2). The clear holding unequivocally applies to relief sought in all cases brought under § 1326(d).

- 3 -

*Mendoza-Andrade*, 2020 WL 1139142, D.Ariz, Mar. 3 2020). In *Arguelles-Campos*, the BIA discussed the federal regulations that implement voluntary departure in Title 8 U.S.C. § 1229(c), and the Defendant relies only upon the analysis of "pre-conclusion voluntary departure." (Doc. 39 at 4-5). None of the Defendant's cited cases, including *Arguelles-Campos*, discuss the statutory language as prescribed by the Congress. But this Court need only consult that statutory language to resolve the issue.[3]

Voluntary departure proceedings are governed by 8 U.S.C. § 1229(c) which states in pertinent part "[t]he Attorney General *may* permit an alien voluntarily to depart the United States *at the alien's own expense* under this subsection, in lieu of being subject to proceedings under section 1229a . . . or prior to the completion of such proceedings[.]" 8 U.S.C. § 1229(c)(a)(1) (emphasis added).[4] The statute's discretionary language permits an IJ to voluntarily deport an alien, at the alien's own expense, as an alternative to being removed.

A review of the Defendant's master calendar hearing reflects that the IJ conducted a group proceeding in the presence of government counsel using a Spanish-speaking interpreter (Doc. 42 at 0:30). The IJ informed each alien of the pending charge, that he is a citizen of Mexico, and that he entered the United States illegally and without first receiving permission from an immigration official (*Id*. at 2:20 – 25).[5] The IJ administered the oath to the Defendant, explained ways to avoid deportation, including "if I were to grant voluntary departure, it would be under safeguard, which means you would be escorted to the border just as if deported. The difference is you don't have a deportation on your record." (*Id*. at 35:55-38:09). The IJ added that "it requires that you have the $5 to pay for

---

[3] "When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear [in the statute], that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837, 842–43 (1984).

[4] The statutory language in 1996 was amended in 2006 to reference new Section 1229.

[5] Two aliens were differently situated from the others, the IJ addressed their circumstances individually.

the bus ride to Nogales" and if so, he would ask additional questions about his immigration and criminal record to determine if he should order deportation as "a matter of discretion." (*Id*. at 36:50-38-17). The IJ also explained "other ways of avoiding deportation such as adjusting status to become a permanent resident[.]" And, the Defendant did not acknowledge an ability to so demonstrate. (*Id*. 39:19-53). The IJ stated for those aliens with the $5 dollars, it can be in the form of cash, Mexican pesos or in the form of a money order. (*Id*. 00:50-1:02). The IJ then obtained the Defendant's acknowledgment that he was born in Mexico and that he entered the United States in June of 2000 near Sasabe, Arizona. The Defendant answered "no" when asked if he had permission to enter the United States upon which the IJ determined "the charge is true." The IJ asked the Defendant if he had $5 for the bus ride and the Defendant said, "no sir" upon which the IJ stated "then I will order your removal to Mexico." (*Id*.) The Defendant then orally and unambiguously waived his right to appeal the IJ's decision. (*Id*. at 26:47-49). The Court finds that the Defendant's hearing did not suffer from a defect that resulted in a fundamentally unfair removal. Nor did the IJ fail to inform the Defendant of his apparent eligibility to apply for relief. *See United States v. Vidal Mendoza,* 705 F.3d 1012, 1015 (9th Cir. 2013). The IJ carefully informed the Defendant of his full panoply of rights, affirmed his entry into the United States without permission, and asked about his ability to depart at his own expense, which, in his case was $5. Indeed, the IJ considered the Defendant's ability to fund his own departure, among other factors, as he is authorized to do by the plain language of the statute.

While not clearly stated, to the extent the Defendant argues that the IJ erred in considering whether the Defendant had the funds to depart in his discretionary review, that argument also fails. As the government points out "an IJ's duty is limited to informing an alien of a reasonable possibility that the alien is eligible for relief at the time of the hearing." (Doc. 44 at 4) (*citing United States v. Lopez-Vasquez*, 629 F.3d 894, 895 (9th Cir. 2010). Moreover, "regardless of which type of voluntary departure the alien seeks, whether to grant a request for voluntary departure rests within the sound discretion of the immigration judge." *Mendoza-Andrade*, 2020 WL 1139142 *3. The Defendant has not raised any claim

that he was eligible for some form of relief, and based on the record before the IJ, there was nothing to suggest that he was. *See United States v. Lopez-Velasquez*, 629 F.3d 894, 900 (9th Cir. 2010) (citations omitted). The Defendant has not challenged his Notice to Appear, his detainer, or the preceding felony conviction. It is reasonable to presume that in making a discretionary finding, an IJ has reviewed the entirety of the information before him. Here, the ability to fund his own departure was not only statutorily required, but the record reflects that it was only one of several factors that weighed into the IJ's determination to remove the Defendant. No due process error occurred and the Defendant did not attempt to exhaust his administrative remedies or seek judicial review.

### B. Plausible Grounds for Relief from the Expedited Removal Order

Although no due process violation occurred in Defendant's expedited removal process, and he apparently now concedes that he was removable, the Court will review whether it was plausible that he could have avoided the removal order had he an opportunity to do so. *See Raya-Vaca*, 711 F.3d 1195, 1205 (9th Cir. 2014) (one who "could plausibly have been granted relief in the form of withdrawal of his application for admission" suffers prejudice in expedited removal proceedings when deprived of the opportunity to ask for this form of relief). The Court must identify the factors relevant to the agency's exercise of discretion for the relief being sought, and then determine, in light of those factors, and in consideration of the Defendant's circumstance, if it was plausible that the agency official considering his case would have granted relief from removal. *Id.* (*citing United States v. Rojas-Pedroza*, 716 F.3d 1263 (9th Cir. 2013); *see also Matter of Thomas*, 21 I. & N. Dec. 20 (1995) (In an IJ's exercise of discretion in voluntary removal proceedings "this Board has found it appropriate to consider evidence of unfavorable conduct, including criminal conduct which has not culminated in a final conviction for purposes of the Act")). The burden is on the Defendant to make a *prima facie* showing of prejudice by demonstrating plausible grounds for relief from deportation. *Rojas-Pedroza,* 716 F.3d. at 1263.

The Defendant asserts that he could have provided the IJ grounds to avoid an order of removal. (Doc. 39 at 7). His primary argument is that "he had no criminal history." (*Id.*

- 6 -

at 1 & 7). At oral argument, he conceded that this is an incorrect statement. As the government points out, the Defendant was referred to the attention of the "INS" because he was convicted of Possession of Drug Paraphernalia, a felony offense, and ordered to serve three-years on probation. (Doc. 44-2). Therefore, the only argument left to support his plausible relief is that he entered the United States as an unaccompanied minor with no prior immigration history. The Court considers these two undisputed facts as positive equities.

However, the Court notes that the Defendant entered the United States on some unknown date in June of 2000 and he turned 18 the following month on July 21. Further, there is nothing in the record to show that he had ties to the United States, and he affirmed that both parents were residing in Mexico at the time of his entry. (Doc. 44-1 at 6). These factors weigh as negative equities. *See Rojas-Pedroza*, 716 F.3d at 1256 ("positive equities include long residence and close family ties to the United States"). Then, six months after entry, on December 4, 2000, he was arrested on two separate charges.[6] Then on December 14, 2000, he appeared in the Maricopa County Superior Court to plead guilty plea to possession of drug paraphernalia and was sentenced for that crime. (Doc. 44-2). He was then referred to the INS for his removal proceedings. The Defendant's short stay in the United States, his guilty plea and adult conviction, for a drug related felony, all weigh as negative equities. The Court finds that the negative equities, therefore, outweigh the positive ones. Consequently, it is not plausible that the IJ would have granted the Defendant voluntary departure even if he had funds to pay for his return to Mexico.

Finding that the Defendant did not meet all three prerequisites required by § 1326(d), accordingly,

**IT IS ORDERED** denying the Defendant's Motion to Dismiss (Doc. 39).

…

…

…

---

[6] Count 1, an unspecified crime, was dismissed. (*Id*.)

**IT IS FURTHER ORDERED** setting a firm trial date of July 21, 2021 at 9:00 a.m. in Courtroom 602.

Dated this 10th day of June, 2021.

Honorable Diane J. Humetewa
United States District Judge